UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

MICHAEL HILL,

                                    Plaintiff,

                                                          9:06-CV-0438
v.                                                        (GTS/GHL)

DR. ROBERT CHALANOR, Coxsackie Correctional
Facility; *et al.*,

                                    Defendants.

_____

APPEARANCES:                          OF COUNSEL:

MICHAEL HILL, 90-B-0732
Plaintiff *pro se*
Southport Correctional Facility
P.O. Box 2000
Pine City, New York 14871

HON. ANDREW M. CUOMO                   ADELE M. TAYLOR-SCOTT, ESQ.
Attorney General for the State of New York
   Counsel for Defendants
The Capitol
Albany, New York 12224

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION

This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable Glenn T. Suddaby,

United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).  Plaintiff

Michael Hill alleges that seven employees of the New York State Department of Correctional

Services ("DOCS")–Dr. Robert Chalanor, Nurse Administrator Margaret Franklin,

1

Superintendent of Health Services Anne Cole, Nurse Joy Albright, Superintendent Dominic

Mantello, Correctional Officer Stephen Oliver, and DOCS Commissioner Glenn S. Goord

("Defendants")–violated his constitutional rights.  Currently pending before the Court is

Defendants' motion to dismiss for failure to state a claim upon which relief may be granted (Dkt.

No. 67) and Plaintiff's motion to amend the complaint.  (Dkt. Nos. 76-77.)   For the reasons that

follow, I recommend that Defendants' motion be granted and Plaintiff's motion be denied.

## I.  BACKGROUND

### A.  *Hill v. Chalanor I*

In 2001, Plaintiff filed a civil rights complaint against the same defendants named in the

current action.  *Hill v. Chalanor*, No. 9:01-CV-0018 LEK/GHL (N.D.N.Y.) ("*Hill I*").  Plaintiff

amended his complaint several times and the case eventually proceeded to cross-motions for

summary judgment of the fourth amended complaint.  The following summary of the *Hill I* case

is taken from this Court's order granting the defendants' motion for summary judgment.  (*Hill I*,

Dkt. No. 107.)

The fourth amended complaint in *Hill I* alleged that on August 29, 2000, Plaintiff

complained about a rash and was examined by a nurse.  He alleged that he was not allowed to

see a doctor because he was "set up by the guards that night with a shank and was immediately

placed" in the Special Housing Unit ("SHU").

On September 7, 2000, Defendant Oliver told Plaintiff that "if Plaintiff did not stop

talking to Quentin Lewis [another SHU inmate], he would tamper with Plaintiff's food, legal

mail, and physically beat him."  Plaintiff alleged that he had been talking to Quentin Lewis about

"legal matters."  Plaintiff did not allege, and the record did not show, that Oliver ever followed

through with his threats.  However, Plaintiff alleged that Oliver further harassed him after Plaintiff filed a grievance regarding the threat.

On September 8, 2000, Defendant Albright examined Plaintiff.  Plaintiff alleged that Albright failed to properly examine him, failed to prescribe medicine to him, and "fixed her reports to state Plaintiff only had dry skin - no rash."

On September 26, 2000, Dr. Chalanor examined Plaintiff.  Dr. Chalanor prescribed Selson shampoo and instructed that Plaintiff apply it five to ten minutes before showering, three times per week.  Plaintiff alleged that Dr. Chalanor refused his request to see an outside dermatologist.  Plaintiff later complained that he was not being given enough shower time to apply shampoo as directed by Dr. Chalanor.  On October 13, 2000, Defendant Nurse Administrator Franklin informed Plaintiff that she had spoken with SHU staff and that Plaintiff would be given an additional eight minutes for showering.

Plaintiff was examined by other medical personnel on October 16, 2000, October 26, 2000, October 30, 2000, and November 8, 2000.  On these occasions, he was prescribed cream, ointment, and shampoo for dry, itchy skin.

Plaintiff alleged that he wrote several letters from late August 2000 through October 2000 regarding the alleged failure to adequately treat his rash and his difficulties with prison personnel to DOCS Commissioner Goord, Superintendent Mantello, Defendant Cole (the Superintendent of Health Services), and Defendant Franklin.  Plaintiff filed a formal grievance regarding Defendant Oliver's conduct, which was denied by Superintendent Mantello and by the Central Office Review Committee ("CORC").  He filed a grievance regarding his medical care, which the Superintendent denied.  Plaintiff did not appeal the issue to CORC.

On May 28, 2004, this Court granted the defendants' motion for summary judgment of Plaintiff's medical claims, finding that Plaintiff had not exhausted his administrative remedies as required by the Prison Litigation Reform Act.  This Court also granted the defendants' motion for summary judgment regarding Plaintiff's claims against Defendant Oliver, holding that Plaintiff had not stated a cause of action for retaliation because his "retaliation claim consists solely of an unsupported, conclusory allegation" that contained "no reference to any actual punishment that Oliver inflicted on Plaintiff.  Plaintiff has failed to allege, let alone introduce evidence, that Defendant Oliver ever followed through with [his] alleged threat in any way.  Since Plaintiff does not allege that Oliver's conduct went beyond threats and amounted to actual punishment, the .... retaliation claim is unsupported."

Plaintiff appealed.  On April 15, 2005, the Second Circuit affirmed this Court's decision in part and vacated it in part.  *Hill v. Chalanor*, 128 Fed. App'x 187 (2d Cir. 2005).  The Second Circuit affirmed this Court's decision dismissing Plaintiff's retaliation claim against Defendant Oliver, noting that the "alleged threats made by defendant Oliver, without any allegation that the latter carried through on those threats, did not constitute adverse action."  *Id.* at 189.  The Second Circuit also noted that Plaintiff "did not provide any specific factual allegations to support his conclusory claim that he suffered further harassment after filing a grievance concerning Oliver's threats" and that Plaintiff's claim "of a causal connection between Oliver's threats and the alleged actions of the other defendants in connection with [his] medical care is wholly unsupported."  *Id*.  The Second Circuit vacated this Court's decision regarding the exhaustion of administrative remedies and remanded with instructions for this Court to "determine ... to what extent the remedy of appealing the Superintendent's decision as to Hill's medical claim to the

4

CORC after Hill was transferred to Southport Correctional Facility was in fact available to Hill." *Id*. at 190.

On remand, this Court determined that an appeal of Plaintiff's medical claims to CORC was available and that Plaintiff had not exhausted that remedy. *Hill v. Chalanor*, 419 F. Supp. 2d 255 (N.D.N.Y. 2006). On March 8, 2006, the Court dismissed Plaintiff's claim without prejudice to re-filing if Plaintiff exhausted his administrative remedy. *Id*.

**B.     The Current Action**

Plaintiff filed his original complaint in this action on April 6, 2006. (Dkt. No. 1.) Plaintiff alleges, and Defendants do not dispute, that he has now exhausted his administrative remedy. The operative complaint is the second amended complaint. It alleges that:

On or about August 29, 2000, Plaintiff was examined in the Coxsackie Medical facility for a serious skin rash. (Dkt. No. 61 at ¶ 13.) The attending nurse issued an order for Plaintiff to be examined by Defendant Dr. Chalanor. (Dkt. No. 61 at ¶ 14.)

That same night, Plaintiff was "deliberately set up by block guards ... with a shank" in retaliation for filing grievances. (Dkt. No. 61 at ¶ 16.) He was placed in the SHU. (Dkt. No. 1 at ¶ 17.) When he arrived at the SHU, Plainitff immediately informed "the defendants of his pain and suffering and the fact that he was having trouble with guards who were constantly harassing and retaliating against him." (Dkt. No. 61 at ¶ 19.)

In the SHU, Plaintiff was housed four cells away from Quentin J. Lewis, who volunteered to help Plaintiff with his legal work. (Dkt. No. 61 at ¶ 18.) On or about September 7, 2000, Defendant Oliver told Plaintiff that if he did not stop talking to Lewis, Oliver would tamper with Plaintiff's food and legal mail and beat him. (Dkt. No. 61 at ¶ 21.) Plaintiff alleges that Defendant Oliver "acted out each of his threats, including running into Plaintiff's cell to beat

him under the pretense of conducting a ... cell search."  (Dkt. No. 61 at ¶ 22.)  Plaintiff also

alleges that Oliver "ran into Plaintiff's cell but was stopped by the area supervisor at the last

second."  (Dkt. No. 61 at ¶ 25.)


Plaintiff alleges that other guards, encouraged by Oliver, harassed Plaintiff.  (Dkt. No. 61

at ¶ 25.)  Plaintiff alleges that these unnamed guards filed false misbehavior reports against him.

He also alleges that guards jammed his toilet, causing it to overflow, and refused to allow him to

clean it up for several days.  (Dkt. No. 61 at ¶ 26.)

Plaintiff alleges that he was "denied access to adequate medical treatment due to

complaining about Oliver's actions."  (Dkt. No. 61 at ¶ 24.)  Plaintiff alleges that Defendant

Oliver did not turn in Plaintiff's written requests for medical care or allow the nurses to stop at

Plaintiff's cell on their daily rounds.  *Id.*

On September 8, 2000, Plaintiff was finally allowed to speak to medical personnel

because Defendant Oliver did not collect the sick call slips or escort the nurse.  (Dkt. No. 61 at ¶

27.)  At about 8:00 a.m., Defendant Joy Albright arrived at Plaintiff's cell.  Plaintiff alleges that

Albright violated DOCS policy by failing to bring Plaintiff's health records with her to the sick

call.  (Dkt. No. 61 at ¶ 30.)  Plaintiff explained that he was in pain and itching badly from an

allergic skin rash that was spreading.  (Dkt. No. 61 at ¶ 28.)

Albright examined Plaintiff through a steel door and asked him what medications he was

receiving.  Plaintiff told her.  (Dkt. No. 61 at ¶ 31.)  Plaintiff alleges that Albright "fixed" her

medical report to say that Plaintiff had only dry skin rather than a rash.  Plaintiff did not receive

any medication.  (Dkt. No. 61 at ¶ 32.)  Plaintiff alleges that Albright "told Plaintiff and her

supervisor that the reason [Plaintiff] did not receive his medication was because she forgot to

take them out of tubes and jars and place them in plastic containers.  When in reality they were never ordered because she reported he didn't need them."  (Dkt. No. 61 at ¶ 33.)

On or about September 26, 2000, Plaintiff was examined by Defendant Chalanor.  Dr. Chalanor examined Plaintiff in his cell and did not conduct any tests.  (Dkt. No. 61 at ¶ 35.) Thereafter, Chalanor refused Plaintiff's requests for follow up care and instead "mocked [him] behind his back to Margaret Franklin as just wanting to see an outside dermatologist."  (Dkt. No. 61 at ¶ 37.)

Plaintiff alleges that he first complained that he was not receiving medication and later that the treatment prescribed was not working.  (Dkt. No. 61 at ¶ 38.)  Despite his complaints, Dr. Chalanor "never checked on his patient to see if he was obtaining the medication or if the treatment was working."  *Id.*  As a result, Plaintiff alleges that he suffered further pain and mental anguish, irritation, itching, and "spreading throughout his body."  He alleges that he was not able to sleep or eat properly for days due to irritation and burning.  (Dkt. No. 61 at ¶ 39.)

Plaintiff alleges that he wrote to Defendant Mantello regarding staff misconduct and his issues with medical treatment and that Mantello "did nothing."  (Dkt. No. 61 at ¶ 47)  Mantello's "only course of action was to designate [Defendant] Anne Cole to investigate the complaints for authenticity."  (Dkt. No. 61 at ¶¶ 42, 48.)

On October 16, 2002, Defendant Cole spoke to Plaintiff as part of her investigation. Plaintiff alleges that Cole "treated him as a nuisance, not in serious pain."  She "became so frustrated, she compared a fungus skin rash on her own hand to Plaintiff's chronic allergic rash and said his problem was nothing and for him to stop writing complaints."  (Dkt. No. 61 at ¶ 43.) Plaintiff alleges that Cole "disregarded Plaintiff's pain, suffering, and medical needs as being no big deal."  (Dkt. No. 61 at ¶ 42.)

7

Plaintiff alleges that Defendant Margaret Franklin knew that "the form of rash [Plaintiff] had spreads if not immediately treated" but nonetheless delayed "making an order authorizing the use of prescribed medication." (Dkt. No. 61 at ¶ 44.) Plaintiff alleges that Franklin knew that Plaintiff was not being treated because he wrote "on a constant basis to tell her so." (Dkt. No. 61 at ¶ 45.) Plaintiff alleges that despite this knowledge, Franklin "lied to Anne Cole during her investigation, assuring her Plaintiff was receiving adequate treatment." *Id.*

Plaintiff alleges that Defendant DOCS Commissioner Glenn S. Goord "refused to respond to Plaintiff's complaints of medical misconduct and the denial of access to court by sabotaging of grievance appeal to CORC as well as allowing medical personnel to deprive prisoners treatment due to a budget cut back." (Dkt. No. 61 at ¶ 50.) Plaintiff further alleges that Goord is responsible for the policy of examining prisoners behind steel doors. (Dkt. No. 61 at ¶ 51.)

Plaintiff alleges that he suffered from serious pain, irritation, and itchiness from August 29, 2000, to October 30, 2000. He further alleges that he developed permanent scars in "all areas" and that he lost hair. (Dkt. No. 61 at ¶ 54.) Plaintiff requests $2.4 million in damages, attorney fees, costs, and a declaratory judgment against each defendant. (Dkt. No. 61 at 17-18.)

## II.   LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). It has long been understood that a defendant may base such a motion on either or both

of two grounds: (1) a challenge to the "sufficiency of the pleading" under Federal Rule of Civil

Procedure 8(a)(2);[1] or (2) a challenge to the legal cognizability of the claim.[2]

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim

*showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) [emphasis added].  By

requiring this "showing," Rule 8(a)(2) requires that the pleading contain a short and plain

statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds

---

[1]     *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem*, 39 B.R. 140, 143 (Bankr. S.D.N.Y. 1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972) ("This motion under Fed. R. Civ. P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed. R. Civ. P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.'").

[2]     *See  Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest. . . .  In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation . . . fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F. Supp.2d 348, 370 (S.D.N.Y. 2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6)].") [citation omitted]; *Util. Metal Research & Generac Power Sys.*, 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a]); *accord, Straker v. Metro Trans. Auth.*, 331 F. Supp.2d 91, 101-102 (E.D.N.Y. 2004); *Tangorre v. Mako's, Inc.*, 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion-- one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

upon which it rests."[3]  The main purpose of this rule is to "facilitate a proper decision on the

merits."[4]  A complaint that fails to comply with this rule "presents far too heavy a burden in

terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis

for the Court to assess the sufficiency of [plaintiff's] claims."[5]

　　　The Supreme Court has long characterized this pleading requirement under Rule 8(a)(2)

as "simplified" and "liberal," and has repeatedly rejected judicially established pleading

requirements that exceed this liberal requirement.[6]  However, it is well established that even this

liberal notice pleading standard "has its limits."[7]  As a result, several Supreme Court and Second

---

[3]　　*Dura Pharm., Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) [citation omitted; emphasis added]; *see also Swierkiewicz*, 534 U.S. at 512 [citation omitted]; *Leathernman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) [citation omitted].

[4]　　*Swierkiewicz*, 534 U.S. at 514 (quoting *Conley*, 355 U.S. at 48); *see also Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

[5]　　*Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, J.), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (unpublished table opinion); *accord*, *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *2 (S.D.N.Y. Nov. 30, 1998), *Flores v. Bessereau*, 98-CV-0293, 1998 WL 315087, at *1 (N.D.N.Y. June 8, 1998) (Pooler, J.).  Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history.  *See, e.g.*, *Photopaint Technol., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir. 2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.*, 104 F.3d 355 [2d Cir. 1996]).

[6]　　*See, e.g.*, *Swierkiewicz*, 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

[7]　　2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).

Circuit decisions exist, holding that a pleading has failed to meet this liberal notice pleading standard.[8]

Most notably, in *Bell Atlantic Corporation v. Twombly*, the Supreme Court, in reversing an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1, "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 127 S. Ct. 1955, 1968-69[9] (2007).[10]  Rather than turning on the

---

[8]       *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964-1974 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement); *accord*, *Dura Pharm.*, 125 S. Ct. at 1634-1635, *Christopher v. Harbury*, 536 U.S. 403, 416-422 (2002), *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234-235 (2d Cir. 2004), *Gmurzynska v. Hutton*, 355 F.3d 206, 208-209 (2d Cir. 2004).  Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz*.  *See, e.g.*, *Salvador v. Adirondack Park Agency of the State of N.Y.*, No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr. 26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2]).  Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz*, of certain cases from within the Second Circuit interpreting Rule 8(a)(2).  *See Khan v. Ashcroft*, 352 F.3d 521, 525 (2d Cir. 2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS*, 244 F.3d 81 [2d Cir. 2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr*, 533 U.S. 289 [2001]).

[9]       All citations to the *Bell Atlantic* decision will be to the S.Ct. cite rather than the U.S. cite because page numbers are not available for the U.S. version.

[10]      The Court in *Bell Atlantic* further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint. . . .  *Conley*, then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Bell Atlantic*, 127 S. Ct. at 1969.

*conceivability* of an actionable claim, the Court clarified, the Rule 8 "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 1965-74.

More specifically, the Court reasoned that, by requiring that a pleading "show[] that the pleader is entitled to relief," Rule 8(a)(2) requires that the pleading give the defendant "fair notice" of (1) the nature of the claim and (2) the "grounds" on which the claim rests. *Id*. at 1965, n.3 [citation omitted]. While this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. [citations omitted]. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*. at 1965 [citations omitted]. What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]." *Id*.

As have other Circuits, the Second Circuit has repeatedly recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Bell Atlantic* governs *all* claims, not merely antitrust claims brought under 15 U.S.C. § 1 (as were the claims in *Bell Atlantic*).[11] The Second Circuit has also recognized that this *plausibility* standard governs claims

---

[11]     *See, e.g., Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir. 2008) (in civil rights action, stating that "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'") [citation omitted]; *Goldstein v. Pataki,* 07-CV-2537, 2008 U.S. App. LEXIS 2241, at *14 (2d Cir. Feb. 1, 2008) (in civil rights action, stating that "*Twombly* requires . . . that the complaint's '[f]actual allegations be enough to raise a right to relief above the speculative level . . . .'") [internal citation omitted]; *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98, n.2 (2d Cir. 2007) ("We have declined to read Twombly's flexible 'plausibility standard' as relating only to antitrust cases.") [citation omitted]; *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (in prisoner civil rights action, stating, "[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly*] is . . . requiring a flexible 'plausibility

12

brought even by *pro se* litigants (although the plausibility of those claims is be assessed generously, in light of the special solicitude normally afforded *pro se* litigants).[12]

It should be emphasized that Rule 8's plausibly standard, explained in *Bell Atlantic*, was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus*, in which the Court stated, "Specific facts are not necessary" to successfully state a claim under Fed. R. Civ. P. 8(a)(2). *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) [citation omitted]. That statement was merely an abbreviation of the often-repeated point of law–first offered in *Conley* and repeated in *Bell Atlantic*–that a pleading need not "set out in detail the facts upon which [the claim is based]" in order to successfully state a claim. *Bell Atlantic*, 127 S. Ct. 1965, n.3 (citing *Conley v. Gibson*, 355 U.S. 41, 47 [1957]). That statement in no way meant that all pleadings may achieve the requirement of giving a defendant "fair notice" of the nature of the claim and the "grounds" on which the claim rests without ever having to allege any facts whatsoever.[13]  There must still be enough facts alleged to raise a right to relief above the

---

standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*.") [emphasis in original].

[12]      *See*, *e.g.*, *Jacobs v. Mostow*, 281 F. App'x 85, 87 (2d Cir. March 27, 2008) (in pro se action, stating, "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'") [citation omitted] (summary order, cited in accordance with Local Rule 32.1[c][1]); *Boykin v. KeyCorp.*, 521 F.3d 202, 215-16 (2d Cir. 2008) (finding that borrower's *pro se* complaint sufficiently presented a "*plausible* claim of disparate treatment," under Fair Housing Act, to give lenders fair notice of her discrimination claim based on lenders' denial of her home equity loan application) [emphasis added].

[13]      For example, in *Erickson*, a district court had dismissed a *pro se* prisoner's civil rights complaint because, although the complaint was otherwise factually specific as to how the prisoner's hepatis C medication had been wrongfully terminated by prison officials for a period of approximately 18 months, the complaint (according to the district court) failed to allege facts plausibly suggesting that the termination caused the prisoner "substantial harm." 127 S. Ct. at 2199. The Supreme Court vacated and remanded the case because (1) under Fed. R. Civ. P. 8

speculative level to a plausible level, so that the defendant may know what the claims are and the grounds on which they rest (in order to shape a defense).

Having said all of that, it should also be emphasized that, "[i]n reviewing a complaint for dismissal under Fed. R. Civ. P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."[14] "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se*."[15]  In other words, while all pleadings are to be

---

and *Bell Atlantic*, all that is required is "a short and plain statement of the claim" sufficient to "give the defendant fair notice" of the claim and "the grounds upon which it rests," and (2) the plaintiff had alleged that the termination of his hepatitis C medication for 18 months was "endangering [his] life" and that he was "still in need of treatment for [the] disease." *Id*. at 2200. While *Erickson* does not elaborate much further on its rationale, a careful reading of the decision (and the dissent by Justice Thomas) reveals a point that is perhaps so obvious that it did not need mentioning in the short decision: a claim of deliberate indifference to a serious medical need under the Eighth Amendment involves two elements, i.e., the existence of a sufficiently serious medical need possessed by the plaintiff, and the existence of a deliberately indifferent mental state possessed by prison officials with regard to that sufficiently serious medical need. The *Erickson* decision had to do with only the first element, not the second element. *Id*. at 2199-2200.  In particular, the decision was merely recognizing that an allegation by a plaintiff that, during the relevant time period, he suffered from hepatis C is, in and of itself, a factual allegation plausibly suggesting that he possessed a sufficiently serious medical need; the plaintiff need not *also* allege that he suffered an independent and "substantial injury" as a result of the termination of his hepatis C medication. *Id*.  This point of law is hardly a novel one.  For example, numerous decisions, from district courts within the Second Circuit alone, have found that suffering from hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment. *See, e.g., Rose v. Alvees*, 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept. 9, 2004); *Verley v. Goord*, 02-CV-1182, 2004 WL 526740, at *10 n.11 (S.D.N.Y. Jan. 23, 2004); *Johnson v. Wright*, 234 F. Supp.2d 352, 360 (S.D.N.Y. 2002); *McKenna v. Wright*, 01-CV-6571, 2002 WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord*, 99-CV-3208, 2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000).

[14]      *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

[15]      *Hernandez*, 18 F.3d at 136 [citation omitted]; *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999) [citation omitted].

construed liberally under Rule 8(e), *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality.

For example, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.[16]  Moreover, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest."[17]  Furthermore, when addressing a *pro se* complaint, *generally* a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."[18]  Of course, an opportunity to

---

[16]     "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss.  However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum."  *Gadson v. Goord,* 96-CV-7544, 1997 WL 714878, at *1, n. 2 (S.D.N.Y. Nov. 17, 1997) (citing, *inter alia, Gil v. Mooney*, 824 F.2d 192, 195 [2d Cir. 1987] [considering plaintiff's response affidavit on motion to dismiss]).  Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.'"  *Donhauser v. Goord*, 314 F. Supp.2d 119, 212 (N.D.N.Y. 2004) (considering factual allegations contained in plaintiff's opposition papers) [citations omitted], *vacated in part on other grounds*, 317 F. Supp.2d 160 (N.D.N.Y. 2004).  This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading–which a motion to dismiss is not.  *See Washington v. James*, 782 F.2d 1134, 1138-39 (2d Cir. 1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss) [citations omitted].

[17]     *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) [internal quotation and citation omitted].

[18]     *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) [internal quotation and citation omitted]; *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

amend is not required where the plaintiff has already amended his complaint.[19]  In addition, an opportunity to amend is not required where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it."[20]

However, while this special leniency may somewhat loosen the procedural rules governing the form of pleadings (as the Second Circuit has observed),[21] it does not completely

---

[19]     *Yang v. New York City Trans. Auth.*, 01-CV-3933, 2002 WL 31399119, at *2 (E.D.N.Y. Oct. 24, 2002) (denying leave to amend where plaintiff had already amended complaint once); *Advanced Marine Tech. v. Burnham Sec ., Inc.*, 16 F.Supp. 2d 375, 384 (S.D.N.Y.1998) (denying leave to amend where plaintiff had already amended complaint once).

[20]     *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted]; *see, e.g.*, *See Rhodes v. Hoy*, 05-CV-0836, 2007 WL 1343649, at *3, 7 (N.D.N.Y. May 5, 2007) (Scullin, J., adopting Report-Recommendation of Peebles, M.J.) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint because the error in his complaint–the fact that plaintiff enjoyed no constitutional right of access to DOCS' established grievance process–was substantive and not formal in nature, rendering repleading futile); *Thabault v. Sorrell*, 07-CV-0166, 2008 WL 3582743, at *2 (D. Vt. Aug. 13, 2008) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint because the errors in his complaint–lack of subject-matter jurisdiction and lack of standing–were substantive and not formal in nature, rendering repleading futile) [citations omitted]; *Hylton v. All Island Cob Co.*, 05-CV-2355, 2005 WL 1541049, at *2 (E.D.N.Y. June 29, 2005) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint arising under 42 U.S.C. § 1983 because the errors in his complaint–which included the fact that plaintiff alleged no violation of either the Constitution or laws of the United States, but only negligence–were substantive and not formal in nature, rendering repleading futile); *Sundwall v. Leuba*, 00-CV-1309, 2001 WL 58834, at *11 (D. Conn. Jan. 23, 2001) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint arising under 42 U.S.C. § 1983 because the error in his complaint–the fact that the defendants were protected from liability by Eleventh Amendment immunity–was substantive and not formal in nature, rendering repleading futile).

[21]     *Sealed Plaintiff v. Sealed Defendant # 1*, No. 06-1590, 2008 WL 3294864, at *5 (2d Cir. Aug. 12, 2008) ("[The obligation to construe the pleadings of *pro se* litigants liberally] entails, at the very least, a permissive application of the rules governing the form of pleadings.") [internal quotation marks and citation omitted]; *see also Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) ("[R]easonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training . . . should not be impaired by harsh

relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Rules 8, 10 and 12.[22]  Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Rules 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[23]  Stated more plainly, when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not absolutely suspended."[24]

## III.   ANALYSIS

### A.   Eleventh Amendment

Defendants argue that to the extent that the complaint contains claims against the supervisory Defendants in their official capacities, the claims are barred by the Eleventh

---

application of technical rules.") [citation omitted].

[22]   *See Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir.1972) (extra liberal pleading standard set forth in *Haines v. Kerner*, 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed. R. Civ. P. 8]); *accord, Shoemaker v. State of Cal.*, 101 F.3d 108 (2d Cir. 1996) (citing *Prezzi v. Schelter*, 469 F.2d 691) [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter*, 469 F.2d 691, within the Second Circuit]; *accord*, *Praseuth v. Werbe*, 99 F.3d 402 (2d Cir.1995).

[23]   *See McNeil v. U.S.,* 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed . . .  we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California*, 422 U.S. 806, 834, n.46 (1975) ("The right of self-representation is not a license . . . not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *cf. Phillips v. Girdich*, 408 F.3d 124, 128, 130 (2d Cir. 2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading []or prejudice the adverse party").

[24]   *Stinson v. Sheriff's Dep't of Sullivan Cty.*, 499 F. Supp. 259, 262 & n.9 (S.D.N.Y. 1980).

Amendment.  (Dkt. No. 67-2 at 5.)  Defendants are more than correct: Plaintiff's claims against *all* of the Defendants in their official capacities are barred by the Eleventh Amendment[25].

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity."  *See* U.S. Const. amend XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Hans v. Louisiana*, 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). State immunity extends not only to the states, but to state agencies and to state officers who act on behalf of the state.  *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf*, 506 U.S. 139, 142-47 (1993); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-06 (1984).

The Eleventh Amendment bars suits against state officials acting in their official capacities.[26]  All DOCS employees, not merely supervisors, are state officials for the purposes of

---

[25]     The Court has the authority to dismiss the claims against the non-supervisory Defendants in their official capacities pursuant to 28 U.S.C. § 1915(e)(2)(B) and Federal Rule of Civil Procedure 12(h)(3).

[26]     *See Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir. 1993) ("The immunity to which a state's official may be entitled in a § 1983 action depends initially on the capacity in which he is sued.  To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993) ("[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983] for money damages against state officials in their official capacities."); *Farid v. Smith*, 850 F.2d 917, 921 (2d Cir. 1988) ("The eleventh amendment bars recovery against an employee who is sued in his official capacity, but does not protect him from personal liability if he is sued in his 'individual' or 'personal' capacity."); *see also Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) ("Obviously, state officials literally are persons.  But a suit against a state official in his or her official capacity is not a suit against the official but rather

the Eleventh Amendment.  *See e.g. Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002); *Tolliver v. NY State Correctional Officers*, No. 99 CIV 9555, 2000 WL 1154311, at *2 (S.D.N.Y. Aug. 14, 2000)("All of the defendants in this case are state officials because they are employees of the New York State Department of Correctional Services.").  Where it has been successfully demonstrated that a defendant is entitled to sovereign immunity under the Eleventh Amendment, the federal court lacks subject matter jurisdiction over the case, and "the case must be stricken from the docket."  *McGinty v. State of New York*, 251 F.3d 84, 100 (2d Cir. 2001) (citation omitted); *see also* Fed. R. Civ. P. 12(h)(3).   Here, the face of the complaint alleges that each Defendant has an official position with DOCS.  (Dkt. No. 61 at ¶¶ 5-10.)  Therefore, any claims against the Defendants in their officials capacities are barred by the Eleventh Amendment.  Accordingly, I recommend that the Court dismiss those claims without leave to amend.

### B.    Eighth Amendment Medical Care Claim

Plaintiff alleges that Defendants failed to provide him with adequate medical care.  Defendants argue that Plaintiff has failed to state an Eighth Amendment medical care claim. (Dkt. No. 67-2 at 7-10.)  Defendants are correct.

To prevail on an Eighth Amendment claim of inadequate medical care, a plaintiff must show two things: (1) that the plaintiff had a *sufficiently serious* medical need; and (2) that the

---

is a suit against the official's office. . . .  As such, it is no different from a suit against the State itself. . . .  We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983.");  *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.  It is not a suit against the official personally, for the real party in interest is the entity.");  *see also Holloway v. Selsky*, 05-CV-0501, 2007 WL 433375, at *4 (N.D.N.Y. Feb. 6, 2007) (Sharpe, J.) [citing cases].

defendant was *deliberately indifferent* to that serious medical need.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

To be sufficiently serious for purposes of the Constitution, a medical condition must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J. dissenting) [citations omitted], *accord*, *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1996), *cert. denied*, 513 U.S. 1154 (1995); *Chance* , 143 F.3d at 702.  Relevant factors to consider when determining whether an alleged medical condition is sufficiently serious include, but are not limited to: (1) the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; (2) the presence of a medical condition that significantly affects an individual's daily activities; and (3) the existence of chronic and substantial pain.  *Chance*, 143 F.3d at 702-03.

Courts in this Circuit have found that skin rashes are not "sufficiently serious" medical needs for Eighth Amendment purposes.  *See Lewal v. Wiley*, 29 Fed. App'x 26, 29 (2d Cir. 2002); *Waring v. Meachum*, 175 F. Supp. 2d 230, 242 (D. Conn. 2001).  *But see Fox v. Brown*, No. 9:05-CV-1292 (LEK/GJD), 2007 WL 586724, at *8 (N.D.N.Y. Feb. 21, 2007) (allegation of rash with open sores sufficient to survive motion to dismiss)[27].  Here, Plaintiff's allegations regarding his rash do not plausibly suggest that he was in the kind of chronic and substantial pain required to trigger Eighth Amendment protection.  Rather, Plaintiff merely alleges that he was in pain, that he itched, and that he was unable to sleep or eat properly for several days due to irritation and burning.  He does not allege that he had any open sores or wounds.  Therefore, I

---

[27]     The undersigned will provide a copy of these unpublished decisions to Plaintiff in light of the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

find that Plaintiff has not alleged facts plausibly suggesting that he suffered from a serious medical need.

Even if Plaintiff had alleged that he suffered from a sufficiently serious medical condition, the complaint does not contain facts plausibly suggesting that Defendants were deliberately indifferent to that need.  Medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act . . . that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance*, 143 F.3d, 698, 703 (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)).  Thus, to establish deliberate indifference, an inmate must prove, that (i) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need, and (ii) that the medical-care provider actually drew that inference.  *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702-703. The inmate then must establish that the provider consciously and intentionally disregarded or ignored that serious medical need.  *Farmer*, 511 U.S. 825, 835; *Ross v. Giambruno*, 112 F.3d 505 (2d Cir. 1997). An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference."  *Estelle*, 429 U.S. at 105-06.  Moreover, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim . . . under the Eighth Amendment."  *Id.*  Stated another way, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.; Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation.").

Here, Plaintiff does not allege any facts plausibly suggesting that Defendants actually drew the inference that he suffered from a serious medical need.  Rather, the face of the

21

complaint alleges that Defendants Albright, Chalanor, and Cole examined Plaintiff's rash and

concluded that it was *not* serious.  Although Plaintiff may not have been satisfied with

Defendants' conclusions, his disagreement with his treatment, at most, would establish a state

law claim for medical malpractice.  Therefore, I recommend that the Court grant Defendants'

motion to dismiss Plaintiff's Eighth Amendment medical claims.

### C.    Claims Against Defendant Oliver

In the current action, Plaintiff has basically reiterated the allegations he raised regarding

Defendant Oliver in *Hill I.*  The only substantive difference between *Hill I* and the current action

is that Plaintiff has now alleged that (1) Oliver attempted to act on his threats to harm Plaintiff

by "running into Plaintiff's cell to beat him under the pretense of conducting a ... cell search"

and by running into Plaintiff's cell but being "stopped by an area supervisor at the last second"

(Dkt. No. 61 at ¶¶ 22, 25); and (2) Oliver interfered with Plaintiff's receipt of medical attention

by failing to turn in Plaintiff's written requests for medical care and refusing to allow the nurses

to stop at Plaintiff's cell on their daily rounds.  (Dkt. No. 61 at ¶24.)   Defendants argue that

Plaintiff's claims against Defendant Oliver are barred by the doctrines of collateral estoppel and

res judicata.  (Dkt. No. 67-2 at 10-14, Dkt. No. 71 at 1-2.)  Defendants are correct.

"The doctrine of res judicata, or claim preclusion, holds that a final judgment on the

merits of an action precludes the parties or their privies from relitigating issues that were or

could have been raised in that action."  *Monahan v. New York City Dept. of Corrections*, 214

F.3d 275, 284-85 (2d Cir. 2000) (punctuation and citations omitted).  To prove the affirmative

defense, a party must show that (1) the previous action involved an adjudication on the merits;

(2) the previous action involved the plaintiffs or those in privity with them; (3) the claims

asserted in the subsequent action were, or could have been, raised in the prior action."

*Monahan,* 214 F.3d at 285; *Esquire Trade & Finance, Inc. v. CBQ, Inc.*, 562 F.3d 516, 520 (2d Cir. 2009).

Defendants have established all three elements of their res judicata affirmative defense. First, *Hill I* involved an adjudication on the merits because summary judgment is a final judgment on the merits for res judicata purposes. *Mitchell v. National Broadcasting Co.*, 553 F.2d 265, 271 (2d Cir. 1977); *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 243 F. Supp. 2d 31, 35-36 (S.D.N.Y. 2003); *Colonial Acquisition Partnership v. Colonial at Lynnfield, Inc.*, 697 F. Supp. 714, 718 n. 5 (S.D.N.Y. 1988). Second, *Hill I* and the current action involve the same parties: Plaintiff and Defendants Chalanor, Franklin, Cole, Albright, Goord, Mantello, and Oliver. Third, the claims asserted in this action either were or could have been raised in *Hill I.* Therefore, Plaintiff's claims against Defendant Oliver are barred by the doctrine of res judicata. Accordingly, I recommend that the Court dismiss Plaintiff's claims against Defendant Oliver.

### D.   Personal Involvement

Plaintiff alleges that Defendants Goord, Franklin, and Montello failed to properly respond to Plaintiff's complaints. (Dkt. No. 61 at ¶¶ 41, 42, 44-45, 47-48, 50-51.) Defendants argue that Plaintiff has insufficiently alleged that Defendants Goord, Franklin, and Mantello were personally involved in any constitutional violation. (Dkt. No. 67-2 at 5-7.) Defendants are correct.

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 [2d Cir. 1991]).[28]  In order to

---

[28]       *Accord*, *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087 (1978); *Gill v. Mooney*, 824 F2d 192, 196 (2d Cir. 1987).

prevail on a cause of action under 42 U.S.C. § 1983 against an individual, a plaintiff must show some tangible connection between the alleged unlawful conduct and the defendant.[29]  If the defendant is a supervisory official, such as a DOCS Commissioner or Deputy Commissioner, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of *respondeat superior*) is insufficient to show his or her personal involvement in that unlawful conduct.[30]  In other words, supervisory officials may not be held liable merely because they held a position of authority.[31]  Rather, supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring.[32]

A prisoner's allegation that a supervisory official failed to respond to a grievance is insufficient to establish that the official "failed to remedy that violation after learning of it through a report or appeal" or "exhibited deliberate indifference ... by failing to act on information indicating that the violation was occurring."  *Rivera v. Goord*, 119 F. Supp. 2d 327,

---

[29]      *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

[30]      *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985).

[31]      *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).

[32]      *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (adding fifth prong); *Wright*, 21 F.3d at 501 (adding fifth prong); *Williams v. Smith*, 781 F.2d 319, 323-324 (2d Cir. 1986) (setting forth four prongs).

24

344-45 (S.D.N.Y. 2000). *See also Watson v. McGinnis,* 964 F. Supp. 127, 130 (S.D.N.Y. 1997)("The law is clear that allegations that an official ignored a prisoner's letter are insufficient to establish liability."). Similarly, where "a supervisor's involvement in prisoner's complaint is limited to forwarding of correspondence to appropriate staff, the supervisor has insufficient personal involvement to sustain a § 1983 cause of action." *Liner v. Goord*, 310 F. Supp. 2d 550, 555 (W.D.N.Y. 2004). District Court decisions in this Circuit have established that:

> where a supervisory official like the Commissioner of Corrections or a prison Superintendent receives letters or similar complaints from an inmate and does not personally respond, the supervisor is not personally involved and hence not liable. On the other hand, where a supervisor receives an inmate grievance or other complaint and responds to it, the supervisor may be liable ... At first glance, these holdings might seem counter-intuitive, as giving supervisors an incentive to inaction in order to avoid personal liability. However, it must be noted that the Commissioner and individual prison Superintendents receive innumerable letters and other forms of inmate complaints and delegate subordinates to handle them. Thus, if mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that § 1983 does not impose *respondeat superior* liability.

*Walker v. Pataro*, No. 99 CIV. 4607, 2002 WL 664040, at *12-13 (S.D.N.Y. Apr. 23, 2002) (internal citations omitted) (collecting and analyzing decisions)[33]. Accordingly, I recommend that the Court dismiss Plaintiff's claims that Defendants Goord, Franklin, and Mantello failed to respond to his grievances.

---

[33]    The undersigned will provide a copy of this unpublished decision to Plaintiff in light of the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

### E.      Other Potential Claims

Construed liberally, the complaint could be read to allege that Defendant Goord violated Plaintiff's due process rights by sabotaging his appeal to CORC and violated Plaintiff's Eighth Amendment right to adequate medical care by depriving prisoners of medical treatment due to budget cutbacks and maintaining a policy of allowing medical personnel to examine prisoners through steel doors.  (Dkt. No. 61 at ¶¶ 50-51) Defendants have not moved to dismiss these claims.  However, I recommend that the Court dismiss them *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2).  Regarding the potential due process claim, the complaint does not contain any facts plausibly suggesting that Goord sabotaged Plaintiff's appeal to CORC.  Such a conclusory allegation cannot be the basis for liability.  Regarding the potential Eighth Amendment claims, as discussed above, Plaintiff did not suffer from a sufficiently serious medical condition.  Even if he did, the complaint does not allege facts plausibly suggesting that Plaintiff would have received different care in the absence of budget cutbacks or examination through steel doors.

Construed liberally, the complaint could be read to allege that Defendant Cole violated Plaintiff's due process rights by improperly investigating Plaintiff's complaints.  However, prisoners do not have a due process right to a thorough investigation of grievances.  *Torres v. Mazzuca*, 246 F. Supp. 2d 334, 341-42 (S.D.N.Y. 2003).  Therefore, I recommend that the Court dismiss any due process claim against Defendant Cole *sua sponte* pursuant to 28 U.S.C. § 195(e)(2).

### E.      Plaintiff's Motion to Amend

On February 22, 2008, I granted Plaintiff's unopposed motion for leave to file a second amended complaint.  (Dkt. No. 60.)  At that time, I ordered that no further amendments would be permitted absent a showing of special circumstances.  *Id.* at 5.  Plaintiff now moves for leave to

file a third amended complaint.  (Dkt. Nos. 76-77.)  Plaintiff states that he should be allowed to amend his complaint again because the "Pro Se Litigators Law Firm" advised him "of several deficiencies within the pleadings of his complaint as well as provided him an illustrated instruction guide on how to properly cure those deficiencies."  (Dkt. No. 76 at 2-3.)  I find that Plaintiff has not established special circumstances that would support allowing him to file a seventh complaint arising from the events at Coxsackie Correctional Facility in the fall of 2000.  Moreover, even if Plaintiff had established special circumstances, amendment would be futile because Plaintiff's proposed third amended complaint does not correct the deficiencies discussed above.  Therefore, I recommend that the Court grant Defendants' motion to dismiss without leave to amend.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 67) be **GRANTED**; and it is further

**RECOMMENDED** that the Court dismiss Plaintiff's due process and Eighth Amendment claims against Defendant Goord and his due process claim against Defendant Cole *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2);

**RECOMMENDED** that Plaintiff's motion to file a third amended complaint (Dkt. Nos. 76-77) be **DENIED**; and it is further

**ORDERED** that the clerk serve copies of *Walker v. Pataro*, No. 99 CIV. 4607, 2002 WL 664040 (S.D.N.Y. Apr. 23, 2002), *Lewal v. Wiley*, 29 Fed. App'x 26 (2d Cir. 2002) and *Fox v. Brown*, No. 9:05-CV-1292 (LEK/GED), 2007 WL 586724 (N.D.N.Y. Feb. 21, 2007) on Plaintiff.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: June 8, 2009
       Syracuse, New York

George H. Lowe
United States Magistrate Judge